08 CV 6196

## THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

JASON T. WILLARD, On Behalf of Himself
And All Others Similarly Situated,

             Plaintiff,

vs.

WACHOVIA CORPORATION, G. KENNEDY
THOMPSON, JOHN D. BAKER, II, PETER C.
BROWNING, JOHN T. CASTEEN, III,
JEROME A. GITT, WILLIAM H. GOODWIN,
JR., MARYELLEN C. HERRINGER, ROBERT
A. INGRAM, DONALD M. JAMES, MACKEY
J. MCDONALD, JOSEPH NEUBAUER,
TIMOTHY D. PROCTOR, ERNEST S. RADY,
VAN L. RICHEY, RUTH G. SHAW, LANTY
L. SMITH, DONA DAVIS YOUNG, THOMAS
J. WURTZ, BENJAMIN J. JOLLEY,
WACHOVIA BENEFITS COMMITTEE,
MANAGEMENT RESOURCES &
COMPENSATION COMMITTEE, and JOHN
DOES 1-10,

             Defendants.

Civil Action No.:_____



### CLASS ACTION COMPLAINT
### FOR VIOLATIONS OF THE EMPLOYEE RETIREMENT
### INCOME SECURITY ACT ("ERISA")

    Plaintiff, a participant in the Wachovia Savings Plan (the "Plan") covering substantially all employees of Wachovia Corporation and its subsidiaries (collectively "Wachovia" or the "Company"), individually and on behalf of all others similarly situated (the "Participants"), alleges as follows:

### INTROUCTION

    1.    This is a class action brought pursuant to § 502 of ERISA, 29 U.S.C. § 1132, against the Plan's fiduciaries, including Wachovia, on behalf of Participants in and beneficiaries of the Plan.

2.      Throughout the Class Period (from January 23, 2007, to the present), the Plan invested in Wachovia common stock ("Wachovia Stock" or "Company Stock"), which was offered as one of the investment alternatives in the Participant Contribution Component of the Plan.

3.      Plaintiff's claims arise from the failure of Defendants, who are Plan fiduciaries, to act solely in the interest of the Participants and beneficiaries of the Plan, and to exercise the required skill, care, prudence, and diligence in administering the Plan and the Plan's assets during the Class Period, as is required by ERISA.

4.      This action is brought on behalf of the Plan and seeks losses to the Plan for which Defendants are personally liable pursuant to ERISA §§ 409 and 502(a)(2), 29 U.S.C. §§ 1109 and 1132(a)(2).  In addition, under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiff seeks other equitable relief from Defendants, including, without limitation, injunctive relief and, as available under applicable law, constructive trust, restitution, and other monetary relief.

5.      As a result of Defendants' fiduciary breaches, as hereinafter enumerated and described, the Plan has suffered substantial losses, resulting in the depletion of *more than $1 billion* of the retirement savings and anticipated retirement income of the Plan's Participants. Under ERISA, the breaching fiduciaries are obligated to restore to the Plan the losses resulting from their fiduciary breaches.

6.      Because Plaintiff's claims apply to the Participants and beneficiaries as a whole, and because ERISA authorizes Participants such as Plaintiff to sue for plan-wide relief for breach of fiduciary duty, Plaintiff brings this as a class action on behalf of all Participants and beneficiaries of the Plan during the Class Period.  Plaintiff also brings this action as a participant seeking Plan-wide relief for breach of fiduciary duty on behalf of the Plan.

7.    In addition, because the information and documents on which Plaintiff's claims are based are, for the most part, solely in Defendants' possession, certain of Plaintiff's allegations are by necessity upon information and belief.  At such time as Plaintiff has had the opportunity to conduct additional discovery, Plaintiff will, to the extent necessary and appropriate, further amend the Complaint, or, if required, seek leave to amend to add such other additional facts as are discovered that further support each of the following Counts below.

### JURISDICTION AND VENUE

8.    ***Subject Matter Jurisdiction.***    This is a civil enforcement action for breach of fiduciary duty brought pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a).  This Court has original, exclusive subject matter jurisdiction over this action pursuant to the specific jurisdictional statute for claims of this type, ERISA § 502(e)(l), 29 U.S.C. § 1132(e)(l).  In addition, this Court has subject matter jurisdiction pursuant to the general jurisdictional statute for "civil actions arising under the . . . laws . . . of the United States." 28 U.S.C. § 1331.

9.    ***Personal Jurisdiction***.    ERISA provides for nation-wide service of process, ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).  All of the Defendants are residents of the United States, and this Court therefore has personal jurisdiction over them.  This Court also has personal jurisdiction over them pursuant to Fed. R. Civ. P. 4(k)(l)(A), because they all would be subject to the jurisdiction of a court of general jurisdiction in the Southern District of New York.

10.    ***Venue.***    Venue is proper in this district pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Plan was administered in this district, some or all of the fiduciary breaches for which relief is sought occurred in this district, and/or some Defendants reside or maintain their primary place of business in this district.

### PARTIES

**Plaintiff**

11.    *Plaintiff Jason T. Willard* is a resident of the State of North Carolina, County of Mecklenberg.  Plaintiff is a former Wachovia employee and is a participant in the Plan.

**Defendants**

12.    *Defendant Wachovia* provides a wide range of commercial and retail banking and trust services through full-service banking offices in Alabama, Arizona, California, Colorado, Connecticut, Delaware, Florida, Georgia, Illinois, Kansas, Maryland, Mississippi, Nevada, New Jersey, New York, North Carolina, Pennsylvania, South Carolina, Tennessee, Texas, Virginia and Washington, D.C.  The Company also provides various other financial services, including mortgage banking, investment banking, investment advisory, home equity lending, asset-based lending, leasing, insurance, international and securities brokerage services, through other subsidiaries.   The Company's retail securities brokerage business is conducted through Wachovia Securities, LLC, and operates in 49 states

13.    Throughout the Class Period, Wachovia's responsibilities included, along with its officers, directors and executives, broad oversight of and ultimate decision-making authority respecting the management and administration of the Plan and the Plan's assets, as well as the appointment, removal, and, thus, monitoring of other fiduciaries of the Plan that it appointed, or to whom it assigned fiduciary responsibility. Throughout the Class Period, the Company exercised discretionary authority with respect to management and administration of the Plan and/or management and disposition of the Plan's assets.

14.    *Defendant Wachovia Board of Directors*.  The Directors who served on the Wachovia Board of Directors (the "Board") were fiduciaries, because they exercised decision-making authority regarding the appointment of Plan fiduciaries and the management of

the Plan's assets throughout the Class Period.  Among other things, the Board determines the annual profit sharing contributions that are made under the Plan.  Moreover, Wachovia acted through the Board in carrying out its Plan-related fiduciary duties and responsibilities, and, thus, members of the Board were fiduciaries to the extent of their personal exercise of such responsibilities.

15.    The "Director Defendants" who served on the Board and acted as fiduciaries with respect to the Plan during the Class Period are as follows:

(a)    *Defendant G. Kennedy Thompson ("Thompson")* is the Chairman, President, Chief Executive Officer, and a director of the Company.  During the Class Period, defendant Thompson was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of Plan fiduciaries and with respect to the management of the Plan, he possessed discretionary authority or discretionary responsibility in the administration of the Plan, and he exercised authority or control with respect to the management of the Plan's assets.

(b)    *Defendant John D. Baker, II ("Barker")* is a director of the Company. During the Class Period, defendant Barker was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of Plan fiduciaries and with respect to the management of the Plan, he possessed discretionary authority or discretionary responsibility in the administration of the Plan, and he exercised authority or control with respect to the management of the Plan's assets.

(c)    *Defendant Peter C. Browning ("Browning")* is a director of the Company.  Upon information and belief, defendant Browning also served as a member of the Management Resources & Compensation Committee ("Compensation Committee") during the

Class Period.  During the Class Period, defendant Browning was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of Plan fiduciaries and with respect to the management of the Plan, he possessed discretionary authority or discretionary responsibility in the administration of the Plan, and he exercised authority or control with respect to the management of the Plan's assets.

(d)     *Defendant John T. Casteen, III ("Casteen")* is a director of the Company.  During the Class Period, defendant Casteen was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of Plan fiduciaries and with respect to the management of the Plan, he possessed discretionary authority or discretionary responsibility in the administration of the Plan, and he exercised authority or control with respect to the management of the Plan's assets.

(e)     *Defendant Jerome A. Gitt ("Gitt")* is a director of the Company.  During the Class Period, defendant Gitt was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of Plan fiduciaries and with respect to the management of the Plan, he possessed discretionary authority or discretionary responsibility in the administration of the Plan, and he exercised authority or control with respect to the management of the Plan's assets.

(f)     *Defendant William H. Goodwin, Jr.  ("Goodwin")* is a director of the Company.  During the Class Period, defendant Goodwin was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of Plan fiduciaries and with respect to the management of the Plan, he possessed discretionary authority or discretionary responsibility in the administration of the Plan, and he exercised authority or control with respect to the management of the Plan's assets.

(g)    **_Defendant MaryEllen C. Herringer ("Herringer")_** is a director of the Company.  During the Class Period, defendant Herringer was a fiduciary within the meaning of ERISA, because she exercised discretionary authority or discretionary control with respect to the appointment of Plan fiduciaries and with respect to the management of the Plan, she possessed discretionary authority or discretionary responsibility in the administration of the Plan, and she exercised authority or control with respect to the management of the Plan's assets.

(h)    **_Defendant Robert A. Ingram ("Ingram")_** is a director of the Company. Upon information and belief, defendant Ingram also served as a member of the Compensation Committee during the Class Period.  During the Class Period, defendant Ingram was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of Plan fiduciaries and with respect to the management of the Plan, he possessed discretionary authority or discretionary responsibility in the administration of the Plan, and he exercised authority or control with respect to the management of the Plan's assets.

(i)    **_Defendant Donald M. James ("James")_** is a director of the Company. During the Class Period, defendant James was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of Plan fiduciaries and with respect to the management of the Plan, he possessed discretionary authority or discretionary responsibility in the administration of the Plan, and he exercised authority or control with respect to the management of the Plan's assets.

(j)    **_Defendant Mackey J. McDonald ("McDonald")_** is a director of the Company.  Upon information and belief, defendant McDonald also served as a member of the Compensation Committee during the Class Period.  During the Class Period, defendant

McDonald was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of Plan fiduciaries and with respect to the management of the Plan, he possessed discretionary authority or discretionary responsibility in the administration of the Plan, and he exercised authority or control with respect to the management of the Plan's assets.

(k)     **Defendant Joseph Neubauer ("Neubauer")** is a director of the Company. During the Class Period, defendant Neubauer was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of Plan fiduciaries and with respect to the management of the Plan, he possessed discretionary authority or discretionary responsibility in the administration of the Plan, and he exercised authority or control with respect to the management of the Plan's assets.

(l)     **Defendant Timothy D. Proctor ("Proctor")** is a director of the Company. Upon information and belief, defendant Proctor also served as a member of the Compensation Committee during the Class Period.  During the Class Period, defendant Proctor was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of Plan fiduciaries and with respect to the management of the Plan, he possessed discretionary authority or discretionary responsibility in the administration of the Plan, and he exercised authority or control with respect to the management of the Plan's assets.

(m)     **Defendant Ernest S. Rady ("Rady")** is a director of the Company.  During the Class Period, defendant Rady was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of Plan fiduciaries and with respect to the management of the Plan, he possessed discretionary authority

or discretionary responsibility in the administration of the Plan, and he exercised authority or control with respect to the management of the Plan's assets.

(n)   **Defendant Van L. Richey ("Richey")** is a director of the Company. During the Class Period, defendant Richey was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of Plan fiduciaries and with respect to the management of the Plan, he possessed discretionary authority or discretionary responsibility in the administration of the Plan, and he exercised authority or control with respect to the management of the Plan's assets.

(o)   **Defendant Ruth G. Shaw ("Shaw")** is a director of the Company. Upon information and belief, defendant Shaw also served as a member of the Compensation Committee during the Class Period. During the Class Period, defendant Shaw was a fiduciary within the meaning of ERISA, because she exercised discretionary authority or discretionary control with respect to the appointment of Plan fiduciaries and with respect to the management of the Plan, she possessed discretionary authority or discretionary responsibility in the administration of the Plan, and she exercised authority or control with respect to the management of the Plan's assets.

(p)   **Defendant Lanty L. Smith ("Smith")** is a director of the Company. During the Class Period, defendant Smith was a fiduciary within the meaning of ERISA, because she exercised discretionary authority or discretionary control with respect to the appointment of Plan fiduciaries and with respect to the management of the Plan, she possessed discretionary authority or discretionary responsibility in the administration of the Plan, and she exercised authority or control with respect to the management of the Plan's assets.

(q)    *Defendant Dona Davis Young ("Young")* is a director of the Company. During the Class Period, defendant Young was a fiduciary within the meaning of ERISA, because she exercised discretionary authority or discretionary control with respect to the appointment of Plan fiduciaries and with respect to the management of the Plan, she possessed discretionary authority or discretionary responsibility in the administration of the Plan, and she exercised authority or control with respect to the management of the Plan's assets.

**Officer Defendants**

16.    *Defendant Thomas J. Wurtz ("Wurtz")* is the Senior Executive Vice President and Chief Financial Officer of the Company.

17.    *Defendant Benjamin J. Jolley ("Jolley")* is the Senior Vice President of the Company and Plan Administrator for the Wachovia Benefits Committee. Defendant Jolley acted as a fiduciary with respect to the Plan at all times during the Class Period. Defendant Jolley signed the Company's most recent Form 11-K concerning the Plan, dated June 30, 2008.

18.    *Defendant Wachovia Benefits Committee (the "Committee")*. The members of the Committee are plan fiduciaries and supervise the investment of the assets of the Plan, and make decisions concerning investment options available under the Plan. The Committee is comprised of defendant Jolley and defendants John Does 1-10.

19.    *Defendant Compensation Committee* is a Board committee which, according to the Company's Charter, consists of a minimum of three directors, with responsibility for, *inter alia*, reviewing the Plan as it deems advisable and conveying appropriate administrative authority of the Plan to the Company management.

20.    Defendants John Does 1-10 are residents of the United States and are or were fiduciaries of the Plan during the Class Period. These defendants whose identities are currently

unknown to Plaintiff may include additional Wachovia employees.  Once their identities are

ascertained, Plaintiff will seek leave to join them under their true names.

## CLASS ACTION ALLEGATIONS

21.    Plaintiff brings this action as a class action pursuant to Rules 23(a), (b)(l), (b)(2)

and (b)(3) of the Federal Rules of Civil Procedure on behalf of himself and the following class of

persons similarly situated (the "Class"):

> All persons who are participants in or beneficiaries of the Plan at
> any time between January 23, 2007, and the present (the "Class
> Period") and whose accounts included investments in Wachovia
> Stock.

22.    Plaintiff meets the prerequisites of Rule 23(a) to bring this action on behalf of the

Class because:

23.    ***Numerosity.***  The members of the Class are so numerous that joinder of all

members is impracticable.  While the exact number of Class members is unknown to Plaintiff at

this time, and can only be ascertained through appropriate discovery, Plaintiff believes there are,

at a minimum, thousands of members of the Class who participated in, or were beneficiaries of,

the Plan during the Class Period.

24.    ***Commonality.***  Common questions of law and fact exist as to all members of the

Class and predominate over any questions affecting solely individual members of the Class.

Among the questions of law and fact common to the Class are:

(a)    whether Defendants acted as fiduciaries;

(b)    whether Defendants breached their fiduciary duties to the Plan, Plaintiff

and members of the Class by failing to act prudently and solely in the interests of the Plan, and

the Plan's Participants and beneficiaries;

(c)    whether Defendants violated ERISA;

(d)    whether the Plan suffered a loss and, by extension, members of the Class sustained a diminution in vested benefits, and

(e)    what is the proper measure of loss to the Plan and subsequent allocation of vested benefits to the Plan's Participants.

25.    *Typicality.*  Plaintiff's claims are typical of the claims of the members of the Class because the Plan, the Plaintiff and the other members of the Class, each sustained a diminution in vested benefits arising out of Defendants' wrongful conduct in violation of federal law as complained of herein.

26.    *Adequacy.*  Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action, complex, and ERISA litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

27.    Class action status in this ERISA action is warranted under Rule 23(b)(l)(B) because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other members not parties to the actions, or substantially impair or impede their ability to protect their interests.

28.    Class action status is also warranted under the other subsections of Rule 23(b) because: (i) prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants; (ii) Defendants have acted or refused to act on grounds generally applicable to the Plan and the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole; and (iii) questions of law or fact common to members of the Class predominate

over any questions affecting only individual members and a class action is superior to the other available methods for the fair and efficient adjudication of this controversy.

## THE PLAN

29.    The Plan is an "employee pension benefit plan" as defined by ERISA §§ 3(3) and (3)(2)(A), 29 U.S.C. §§ 1002(3) and 1002(2)(A).

30.    The Plan is a legal entity that can sue or be sued.  ERISA § 502(d)(1), 29 U.S.C. § 1132(d)(1).

31.    In this action for breach of fiduciary duty, the Plan is neither a plaintiff nor a defendant.  Rather, Plaintiff requests relief for the benefit of the Plan and for the benefit of its Participants.

32.    The Plan is a "defined contribution plan" or "individual account" plan within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34), in that the Plan provides for individual accounts for each Participant and for benefits based solely upon the amount contributed to the Participants' account, and any income, expenses, gains and losses, and any forfeitures of accounts of other Participants which may be allocated to such Participants' accounts. Consequently, retirement benefits provided by the Plan are based solely on the amounts allocated to each individual's account.

33.    The Plan is a voluntary contribution Plan whereby Participants make contributions to the Plan ("Voluntary Contributions") and direct the Plan to purchase investments with those contributions from options pre-selected by Defendants which are then allocated to Participants' individual accounts.

34.    The Plan is described as follows in the Company's most recent Form 11-K:

> Wachovia Corporation and its subsidiaries (the "Companies") sponsor the Plan, **which is designed to promote savings for**

*retirement*, and which is a defined contribution pension plan. The Companies' and employees' contributions are held in trust and earn income tax-free until distributed. The Plan is subject to the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"). Effective January 1, 1999, the portion of the Plan invested in the Wachovia Corporation Common Stock Fund was amended to be an employee stock ownership plan that invests primarily in employer securities. The first one percent of the Companies' matching contribution is made in Wachovia Corporation common stock. Each employee can immediately elect to liquidate the Wachovia Corporation common stock credited to the employee's account by transferring the value of the common stock to any of a number of investment options available within the Plan.

*        *        *

Under the Plan, an employee is eligible to make contributions beginning on the first of the month following the month in which they complete one full calendar month of service. The employee is eligible to receive employer matching contributions after one year of service. Employee contributions, pre-tax and after-tax, are elected by the participant and cannot exceed 30 percent of the employee's benefits eligible compensation. In addition, participants age 50 or older during the calendar year may contribute as catch-up contributions an additional amount up to 50 percent of their benefits eligible compensation provided they contribute at least 6 percent each pay period or have reached the $15,500 before tax contribution limit. The maximum percentage of the employer matched contribution is determined annually by the Companies' Senior Executive Vice President of the Human Resources Division, and the contribution amounts are paid from net income or accumulated earnings in accordance with the provisions of the Internal Revenue Code of 1986 as amended together with all regulations, revenue rulings and revenue procedures issued thereunder (the "Code"). The employer's matching contribution cannot exceed 6 percent of a participant's benefits eligible compensation. Participants are fully vested in their entire account balances at all times.

35.    The Plan offers the Wachovia Corporation Common Stock Fund (the "Company Stock Fund") for investment of contributions.

36.    The Plan also offers an employee stock ownership plan ("ESOP") that invests primarily in employer securities.

37.    The Plan allocates one portion of the ESOP to Participants' individual accounts. The other portion of the ESOP is unallocated.    That is, it remains within the Plan, not in individual accounts.

38.    During the Class Period, the Company made Matching Contributions to the Plan. Employees become eligible for Company Matching Contributions upon completing one year of service.    The percentage of Matching Contributions is determined annually by the Wachovia Human Resources and Corporate Relations Director, the Executive Vice President of Human Resources, and/or the Wachovia CEO, but cannot exceed six percent of a participant's eligible compensation.

39.    As of December 31, 2006, the Plan held approximately 34 million shares of Wachovia Stock, having a then-market value of approximately $1.8 billion, and representing 22 percent of the net assets of the Plan.    As of December 31, 2007, the Plan held approximately 31.5 million shares of Wachovia stock, having a then-market value of approximately $1.2 billion, and representing 14.4 percent of the net assets of the Plan.

40.    During the previous 18 months, the Plan has suffered a severe loss as a result of the Plan's investment in Company stock as described below.

**Plan Fiduciaries**

41.    *Named Fiduciaries*.    ERISA requires every plan to provide for one or more named fiduciaries of the plan pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1002(21)(A).    The person named as the "administrator" in the plan instrument is automatically a named fiduciary, and in the absence of such a designation, the sponsor is the administrator.    ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).

42.    *De Facto Fiduciaries*.  ERISA treats as fiduciaries not only persons explicitly named as fiduciaries under ERISA § 402(a)(1), but also any other persons who in fact perform fiduciary functions.  Thus, a person is a fiduciary to the extent "(i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management of disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."  ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i).

43.    Each of the Defendants was a fiduciary with respect to the Plan and owed fiduciary duties to the Plan and its Participants under ERISA in the manner and to the extent set forth in the governing Plan documents, through their conduct, and under ERISA.

44.    As fiduciaries, Defendants were required by ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1) to manage and administer the Plan -- and the Plan's investments -- solely in the interest of the Plan's Participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

45.    Plaintiff does not allege that each defendant was a fiduciary with respect to all aspects of the Plan's management and administration.  Rather, as set forth below, Defendants were fiduciaries to the extent of the specific fiduciary discretion and authority assigned to or exercised by each of them, and, as further set forth below, the claims against each defendant are based on such specific discretion and authority.

## WACHOVIA STOCK WAS AN
## IMPRUDENT INVESTMENT FOR THE PLAN

46.    Throughout the Class Period, the Company was involved serious mismanagement and improper business practices, including: (i) the Company's reckless concentration on loan production in spite of the declining mortgage market; (ii) the Company's failure to limit its exposures and risks with respect to the acquisition of Golden West Financial Corporation ("Golden West"); (iii) the Company's failure to accurately account for its high-risk mortgage and collateralized debt obligations ("CDO") holdings; and (iv) the Company's repeated misrepresentations concerning its true financial condition.

47.    These problems were known or should have been known to Defendants and other Plan fiduciaries to be identified through discovery. Defendants allowed the Plan to continue to purchase artificially inflated Company stock in spite of the Company's failure to accurately report and record its true financial condition. Defendants also failed to ensure that material adverse information concerning the Company's true financial condition and matters affecting the management of risk within the Company, and the reputation of the Company, were made available to Plan Participants.

48.    Despite warnings from industry and government regulators, the Company continued to grow its business in the mortgage market and engage in risky and inappropriate business practices leading up to and during the subprime fallout.

49.    Throughout the Class Period, the Company was highly concentrated on loan production and servicing. In short, this over extension in loan production and servicing put the Company and its shareholders, including the Plan's Participants and beneficiaries, at risk for massive losses that would be realized once the Company's true financial condition was disclosed.

50.    Further, throughout the Class Period, the Company failed to accurately disclose

the risks and exposures associated with Golden West's heavy concentration on loan production.

The mortgage market was in a downward spiral well before the Company admitted its exposure

resulting from the Golden West acquisition.  In fact, the Company continued to highlight the

merger with Golden West as a benefit to the Company throughout the Class Period when the

actual effects of the acquisition made such a positive outlook false and misleading.

51.    It was only after the Company was facing a mortgage meltdown that it recognized

the losses, risks and exposures that the Golden West deal actually brought to the Company.

52.    In addition, the Company failed to reduce its exposure to losses in its CDO

market, a gross risk management oversight that cost the Company severely as the credit crunch

undermined the Company's CDO business.  The Company's concentration in the CDO market

made the Company stock increasingly risky during the Class Period.

**Throughout the Class Period, the Company Disseminated**
**False and Misleading Information to Plan Participants**

53.    Throughout the Class Period, the Company made false and misleading statements

to Plan Participants regarding its financial condition and false assurances regarding the

sufficiency of its risk management processes. These false and misleading statements caused the

price of the Company's stock to be artificially inflated during the Class Period.

54.    On July 20, 2007, the Company issued a press release entitled *Wachovia Earns*

*Record $2.34 Billion, EPS Up 4% To $1.22 -- Growth Reflects Strength In Market-Related*

*Businesses And Traditional Banking Market Expansion.*  It was in this press release that the

Company stated:

> "Our second quarter performance reflects our continued focus on
> execution in both the traditional banking and markets-related
> businesses," said Ken Thompson, Wachovia chairman and chief

executive officer. "All four of our major businesses delivered double-digit earnings growth, fueled by new markets, revenue growth initiatives and an expanded product set. Especially gratifying is our employees' continuing dedication to providing industry-leading customer service – which generated record loyalty and satisfaction scores this quarter.   The integration of Golden West is proceeding as planned, and we're excited by the cross-sell potential of our expanded platform. Additionally, our focus on efficiency and risk management continues to provide flexibility for investment for future growth."

55.    The July 20, 2007 press release was filed on Form 8-K with the SEC.  The Form 8-K was a fiduciary communication and was incorporated into Plan documents, including, but not limited to, the Company's Summary Plan Description ("SPD").

56.    Further, on August 21, 2007, the Company issued a press release entitled *Wachovia Corporation Increases Quarterly Dividend 14% to 64 Cents Per Share*.  It was in this press release that the Company maintained that it had in place adequate risk management processes, both within its constituent businesses and on a Company-wide basis.   The press release stated in relevant part:

Wachovia Corporation's (NYSE:WB) board of directors today approved a 14 percent increase in the company's regular quarterly cash dividend to 64 cents per common share, up from the current 56 cents per share.  The new common stock dividend is payable on September 17, 2007, to shareholders of record as of the close of business on August 31, 2007.
*"Today's announcement reflects our Board's confidence in Wachovia's capital strength, liquidity, prudent risk profile and our future,"* said Ken Thompson, chairman and chief executive officer of Wachovia.   "We believe it is important that our shareholders are rewarded on their investment with a growing dividend."

(Emphasis added).

57.    The August 21, 2007 press release was filed on Form 8-K with the SEC.  The Form 8-K was a fiduciary communication and was incorporated into Plan documents, including,

- 19 -

but not limited to, the Company's SPD.

58.    On October 19, 2007, the Company issued a press release entitled *Wachovia Earns $1.69 Billion, EPS of 89 Cents Per Share -- Strength In Core Banking And Brokerage Businesses Offset By Impact Of Global Fixed Income Market Disruption.*  It was in this press release that the Company continued to conceal its actual exposures in the wake of massive sector-wide losses.   In fact, the Company touted its strength and blamed its loss on market conditions.  The press release stated in relevant part:

> Wachovia Corp. (NYSE:WB) today reported net income of $1.69 billion, or 89 cents per share, in the third quarter of 2007 compared with $1.88 billion, or $1.17 per share, in the third quarter of 2006. "I'm very proud of our ability to provide capital, liquidity and advice to our customers and peers in the face of the disruption in the fixed income markets in the third quarter.  These conditions clearly had a disappointing impact on the results of market-oriented businesses, but the strength in our core banking and brokerage businesses continued to serve us very well," said Ken Thompson, Wachovia chairman and chief executive officer.  "Our loan and deposit trends were solid, and our retail brokerage performance was strong – and poised for even more growth as our A.G. Edwards colleagues join our team. Additionally, the first of our World Savings branch and deposit conversions was completed successfully last weekend, and going forward, attention in our expanded platform returns fully to sales production. *While the impact of the market disruption was significant, it's worth noting that the majority of the lower market valuations in the third quarter largely arose from a repricing of risk in the marketplace and do not reflect deterioration in the underlying credit quality of the assets in our leveraged finance and commercial real estate securitization businesses.* Looking ahead, we're taking the appropriate steps to ensure that as markets remain unsettled, we focus intently on actively managing our exposures and controlling costs. Longer term, we believe the challenges of the third quarter will be an advantage to companies like Wachovia with strong capital and liquidity positions and a clear understanding of the needs of customers and investors."

(Emphasis added).

59.    The October 19, 2007, press release was filed on Form 8-K with the SEC.  The

Form 8-K was a fiduciary communication and was incorporated into Plan documents, including, but not limited to, the Company's SPD.

60.    Throughout the Class Period, the Company repeatedly misrepresented the financial health of the Company.  It was not until April 14, 2008 that the Company issued a press release and revealed the true and actual extent of its losses.  The press release stated in relevant part:

> Wachovia today announced a series of actions to further enhance its capital base and operational flexibility, and updated its credit reserve modeling to reflect greater emphasis on forecasted changes in customer behavior assuming continued house price depreciation. These actions include:
> - Plans to raise capital through a public offering of common stock and perpetual convertible preferred stock;
> - Lowering the quarterly common stock dividend, which preserves $2.0 billion of capital annually, to build capital ratios and provide more operational flexibility.  The board of directors declared a quarterly common stock dividend of $0.375 cents per common share, payable on June 16, 2008, to stockholders of record on May 30, 2008.  This dividend level is consistent with Wachovia's capital needs and growth opportunities for each of its business segments, and with an anticipated 40 percent to 50 percent cash payout ratio over the intermediate horizon; and
> - The update in the credit reserve modeling in response to the current and forecasted market environment and its effect on consumer behavior, particularly in stressed markets, resulting in a significant increase in the first quarter 2008 provision for credit losses.  In addition, the scope of credit disclosures was increased to provide enhanced insight into the payment option consumer real estate portfolio.
>
> In addition, Wachovia reported a first quarter 2008 net loss of $350 million before preferred dividends, or a net loss available to common stockholders of $393 million, (20 cents per common share). These results, which reflect higher credit costs and the continued disruption in the capital markets, compared with earnings of $2.30 billion, or $1.20 per share, in the first quarter of 2007.

61.    The April 14, 2008 press release was filed on Form 8-K with the SEC.  The Form

8-K was a fiduciary communication and was incorporated into Plan documents, including, but

not limited to, the Company's SPD.

62.    Shortly thereafter, on May 6, 2008, the Company issued a press release stating

that it would amend it results for the first quarter 2008.  The press release stated in relevant part:

> On April 14, 2008, Wachovia Corporation ("Wachovia") announced its financial results for the quarter ended March 31, 2008, which reflected a net loss available to Wachovia's common stockholders of $393 million, or $(0.20) per share of Wachovia common stock.  ***Wachovia has subsequently reviewed information regarding stable value agreements ("SVA") totaling $360 million provided by a third-party guarantor with respect to three related contracts within Wachovia's bank-owned life insurance ("BOLI") portfolio.*** Upon review of such information, Wachovia has concluded that the company will record valuation losses of $315 million on the related BOLI assets in its financial statements for the quarter ended March 31, 2008, which will increase the net loss available to common stockholders for such quarter to $708 million, or $(0.36) per share. Although no assurances can be given, Wachovia believes it is possible that certain circumstances may arise that would allow it to realize benefits from these SVAs which would be recognized as gains in future periods. The valuation losses will be reflected in Wachovia's financial statements which will be included in its 2008 First Quarter Report on Form 10-Q.

(Emphasis added).

63.    On June 2, 2008, the Company issued a press release announcing that defendant

Thompson, Chief Executive Officer, President and a director of the Company, retired from the

Company and as a member of the Company's Board of Directors, effective June 1, 2008.

64.    By July 8, 2008, Company Stock traded below $15 per share, *a decline of 75%

since the beginning of the Class Period*.

65.    Throughout the Class Period, Defendants knew or were reckless in not knowing

that the Company stock was an imprudent investment for the Plan due to the Company's serious

mismanagement and improper business practices, including, among other practices: (i) the

Company's reckless concentration on loan production in spite of the declining mortgage market; (ii) the Company's failure to limit its exposures and risks especially with respect to the acquisition of Golden West; (iii) the Company's failure to accurately account for its high-risk mortgage and CDO holdings; and (iv) the Company's repeated misrepresentations of the Company's true financial condition.

## THE LAW UNDER ERISA

66.     ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), provides, in pertinent part, that a civil action may be brought by a participant for relief under ERISA § 409, 29 U.S.C. § 1109.

67.     ERISA § 409(a), 29 U.S.C. § 1109(a), "Liability for Breach of Fiduciary Duty," provides, in pertinent part, that any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

68.     ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B), provides, in pertinent part, that a fiduciary shall discharge his duties with respect to a plan solely in the interest of the Participants and beneficiaries, for the exclusive purpose of providing benefits to Participants and their beneficiaries, and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

69.    These fiduciary duties under ERISA § 404(a)(l)(A) and (B) are referred to as the duties of loyalty, exclusive purpose and prudence, and are the highest known to the law.  They entail, among other things:

(a)    the duty to conduct an independent and thorough investigation into, and continually to monitor, the merits of all the investment alternatives of a plan, including in this instance the Plan, which invested in Wachovia Stock, to ensure that each investment is a suitable option for the Plan;

(b)    the duty to avoid conflicts of interest and to resolve them promptly when they occur.  A fiduciary must always administer a plan with an "eye single" to the interests of the Participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the Plan's sponsor; and

(c)    a duty to disclose and inform, which encompasses: (i) a negative duty not to misinform; (ii) an affirmative duty to inform when the fiduciary knows or should know that silence might be harmful; and (iii) a duty to convey complete and accurate information material to the circumstances of Participants and beneficiaries.

70.    ERISA § 405(a), 29 U.S.C. § 1105(a), "Liability for breach by co-fiduciary," provides, in pertinent part, that ". . . [i]n addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances: (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (2) if, by his failure to comply with section 404(a)(l), 29 U.S.C. § 1104(a)(l), in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to

commit a breach; or (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach."

71.    Plaintiff therefore brings this action under the authority of ERISA § 502(a)(2) for Plan-wide relief under ERISA § 409(a) to recover losses sustained by the Plan arising out of the breaches of fiduciary duties by Defendants for violations under ERISA § 404(a)(l) and ERISA § 405(a).

**DEFENDANTS' FIDUCIARY STATUS**

72.    ERISA requires every plan to provide for one or more named fiduciaries who will have "authority to control and manage the operation and administration of the plan." § 402(a)(l), 29 U.S.C. § 1102(a)(l).

73.    During the Class Period, all of the Defendants acted as fiduciaries of the Plan pursuant to ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), and the law interpreting that section. As outlined herein, Defendants all had discretionary authority and control with respect to the management of the Plan and/or the management or disposition of the Plan's investments and assets, and/or had discretionary authority or responsibility for the administration of the Plan.

74.    During the Class Period, Defendants' direct and indirect communications with the Plan's Participants included statements regarding investments in Company Stock. Upon information and belief, these communications included, but were not limited to, SEC filings, annual reports, press releases, Company presentations made available to the Plan's Participants via the Company's website and Plan-related documents which incorporated and/or reiterated these statements. Defendants also acted as fiduciaries to the extent of this activity.

75.    In addition, under ERISA, in various circumstances, non-fiduciaries who knowingly participate in fiduciary breaches may themselves be liable.  To the extent any of the

Defendants are held not to be fiduciaries, they remain liable as non-fiduciaries who knowingly participated in the breaches of fiduciary duty described below.

## CAUSES OF ACTION

## COUNT I

76.     Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

77.     At all relevant times, as alleged above, Defendants were fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

78.     As alleged above, Defendants were responsible, in different ways and to differing extents, for the selection and monitoring of the Plan's investment options, including the option of Company Stock.

79.     Under ERISA, fiduciaries who exercise discretionary authority or control over management of a plan or disposition of a plan's assets are responsible for ensuring that investment options made available to participants under a plan are prudent. Furthermore, such fiduciaries are responsible for ensuring that assets within the plan are prudently invested. Defendants were responsible for ensuring that all investments in Wachovia Stock in the Plan were prudent and that such investment was consistent with the purpose of the Plan. Defendants are therefore liable for losses incurred as a result of such investments being imprudent.

80.     A fiduciary's duty of loyalty and prudence requires it to disregard plan documents or directives that it knows or reasonably should know would lead to an imprudent result or would otherwise harm plan participants or beneficiaries. ERISA § 404(a)(l)(D), 29 U.S.C. § 1104(a)(l)(D). Thus, a fiduciary may not blindly follow plan documents or directives that would lead to an imprudent result or that would harm plan participants or beneficiaries, nor may it

allow others, including those whom they direct or who are directed by the plan, including plan trustees, to do so.

81.    Moreover, during the Class Period, despite their knowledge of the imprudence of the investment, Defendants failed to take any meaningful steps to prevent the Plan, and indirectly the Plan's Participants and beneficiaries, from suffering losses as a result of the Plan's investment in Wachovia Stock. Further, given that such a high concentration of the assets of the Plan was invested in the stock of a single company (Wachovia), Defendants were obliged to have in place some financial strategy to address the extreme volatility of single equity investments. All categories of Defendants failed to implement any such strategy.

82.    The fiduciary duty of loyalty also entails a duty to avoid conflicts of interest and to resolve them promptly when they occur. A fiduciary must always administer a plan with single-minded devotion to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor.

83.    Defendants breached their co-fiduciary obligations by, among their other failures: knowingly participating in, or knowingly undertaking to conceal, the failure to prudently and loyally manage the Plan's assets with respect to offering Company Stock as an investment option in the Plan; enabling Defendants' failure to prudently manage the Plan's assets with respect to the Plan's investments; and, having knowledge of the failure to prudently manage the Plan's assets, yet not making any effort to remedy the breach.

84.    Specifically, at least some of the defendants had actual knowledge of Wachovia's corporate malfeasance and questionable reporting and business. In addition, in light of their high-ranking positions as high ranking officers at the Company, Director Defendants had/should have had constructive knowledge of these activities.

85.     Despite this knowledge, Defendants participated in each other's failures to prudently manage the Plan's assets and knowingly concealed such failures by not informing Participants that the Plan's holdings of Wachovia Stock were not being prudently managed. They also failed to remedy their mutual breaches of the duty to prudently manage the Plan's investment in Wachovia Stock, despite inarguably having knowledge of such breaches.

86.     Furthermore, through their own failure to prudently and loyally manage the Plan's investment in Wachovia Stock, or to undertake any genuine effort to investigate the merits of such investment, or to ensure that other fiduciaries were doing so, Defendants enabled their co-fiduciaries to breach their own independent duty to prudently and loyally manage the Plan's investment in Wachovia Stock.

87.     As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan, and indirectly Plaintiff and the Plan's other Participants and beneficiaries, lost a significant portion of their investments meant to help Participants save for retirement Pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a) and ERISA § 409, 29 U.S.C. § 1109(a), Defendants in this Count are liable to restore the losses to the Plan caused by their breaches of fiduciary duties alleged in this Count.

## COUNT II

88.     Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

89.     At all relevant times, as alleged above, Defendants were fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

90.     As alleged above, the scope of Defendants' fiduciary duties and responsibilities included disseminating Plan documents and information to Participants regarding the Plan and

assets of the Plan.  In addition, Defendants had a duty to provide Participants with information they possessed that they knew or should have known, would have an extreme impact on the Plan.

91.    The duty of loyalty under ERISA requires fiduciaries to speak truthfully to Participants, not to mislead them regarding the Plan or the Plan's assets, and to disclose information that Participants need in order to exercise their rights and interests under the Plan. This duty to inform Participants includes an obligation to provide Participants and beneficiaries of the Plan with complete and accurate information, and to refrain from providing false information or concealing material information regarding the Plan's investment options such that Participants can make informed decisions with regard to investment options available under the Plan, this duty applies to all of the Plan's investment options, including investment in Wachovia Stock.

92.    Because a substantial percentage of the Plan's assets were invested in Wachovia Stock, and Defendants chose to invest overwhelmingly in Wachovia Stock, such investment carried with it an inherently high degree of risk.  This inherent risk made Defendants' duty to provide complete and accurate information particularly important with respect to Company Stock.

93.    Specifically, Wachovia, through its officers and directors, issued a multitude of false and misleading statements through SEC filings and press releases regarding value of Wachovia Stock and the financial health of the Company.

94.    Upon information and belief, such communications were disseminated directly to all Participants, which incorporated by reference the Company's materially misleading and inaccurate SEC filings and reports furnished by Wachovia, through its officers and Director Defendants.  In addition, upon information and belief, the Company communicated directly with

all Participants regarding the merits of investing in Wachovia Stock in company-wide and uniform communications, and, yet, in the context of such communications failed to provide complete and accurate information regarding Wachovia Stock as required by ERISA.

95.    In addition, Defendants were responsible for providing Participants in the Plan with investment education and communication.  Defendants, however, failed to disclose any information to Plan Participants regarding Wachovia's deceitful business practices and how these activities adversely affected Company stock as a prudent investment option under the Plan. Defendants thus breached their duty to provide Participants with complete and accurate information necessary for making informed investment decisions with regard to investment options under the Plan.

96.    Defendants breached their duty to inform Participants by failing to provide complete and accurate information regarding Wachovia Stock, making material misrepresentations about the Company's financial condition, and, generally, by conveying inaccurate information regarding the soundness of Wachovia Stock and the prudence of investing retirement contributions in the Company's stock.

97.    These failures were particularly devastating to the Plan and the Participants, as a significant percentage of the Plan's assets were invested in Wachovia Stock during the Class Period and, thus, the stock's precipitous decline had an enormous impact on the value of Participants' retirement assets.

98.    In addition, Wachovia and the other defendants knew or should have known that information they possessed regarding the true condition of Wachovia would have an extreme impact on the Plan. Yet, in violation of their fiduciary duties, these Defendants failed to provide Participants with this crucial information.

- 30 -

99.    As a consequence of the failure of Defendants to satisfy their disclosure obligations under ERISA, Participants lacked sufficient information to make informed choices regarding investment of their retirement savings in Wachovia Stock, or to appreciate that under the circumstances known to the fiduciaries, but not known by Participants, Wachovia Stock was an inherently unsuitable and inappropriate investment option for their Plan accounts.   Had accurate information been provided, Participants could have protected themselves against losses accordingly, and consequently, Participants relied to their detriment on the incomplete and inaccurate information provided by Defendants in their fiduciary communications and failures thereof.

100.    As a consequence of Defendants' breaches of fiduciary duty, the Plan suffered tremendous losses.  If these Defendants had discharged their fiduciary duties to prudently invest the Plan's assets, the losses suffered by the Plan would have been minimized or avoided. Therefore, as a direct and proximate result of the breaches of fiduciary and co-fiduciary duties alleged herein, the Plan, and indirectly Plaintiff and the other Class members, lost millions of dollars of retirement savings.

101.    Pursuant to ERISA §§ 409 and 502(a), 29 U.S.C. §§ 1109(a) and 1132(a), Defendants in this Count are liable to restore the losses to the Plan caused by their breaches of fiduciary duties alleged in this Count and to provide other equitable relief as appropriate.

## COUNT III

102.    Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

103.    At all relevant times, as alleged above, Defendants were fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).  At all relevant times, as alleged above, the scope of the fiduciary responsibilities of Defendants included the responsibility to appoint,

evaluate, and monitor other fiduciaries. The duty to monitor entails both giving information to and reviewing the actions of the monitored fiduciaries. Defendants had the duty to:

(a)    ensure that the appointed Plan fiduciaries possess the needed credentials and experience, or use qualified advisors and service providers to fulfill their duties. They must be knowledgeable about the operations of the Plan, the goals of the Plan, as noted above, and the behavior of the Plan's Participants;

(b)    ensure that the appointed Plan fiduciaries are provided with adequate financial resources to do their job;

(c)    ensure that the appointed Plan fiduciaries have adequate information to do their job of overseeing the Plan's investments;

(d)    ensure that the appointed Plan fiduciaries have ready access to outside, impartial advisors when needed;

(e)    ensure that the appointed Plan fiduciaries maintain adequate records of the information on which they base their decisions and analysis with respect to the Plan's investment options; and

(f)    ensure that the appointed Plan fiduciaries report regularly to the Company, the Company must then review, understand, and approve the conduct of the hands-on fiduciaries.

104.    Under ERISA, a monitoring fiduciary must ensure that the monitored fiduciaries are performing their fiduciary obligations, including those with respect to the investment of plan assets, and must take prompt and effective action to protect the plan and participants when they are not. In addition, a monitoring fiduciary must provide the monitored fiduciaries with complete and accurate information in their possession that they know or reasonably should know

that the monitored fiduciaries must have in order to prudently manage the plan and the plan assets.

105.    Defendants breached their fiduciary monitoring duties by, among other things, (a) failing to ensure that the appointed Plan fiduciaries were given adequate information about the Company's business problems alleged above, which made Company Stock an imprudent investment, which was necessary for them to perform their duties of overseeing the Plan's investments, and (b) failing to ensure that the monitored fiduciaries completely appreciated the huge risk of significant investment by rank and file employees in an undiversified employer stock fund which was made up primarily of Company Stock, an investment that was imprudent and inherently subject to significant downward movements, especially here where the stock was artificially inflated by non-public corporate malfeasance and illicit activities.

106.    Defendants also breached this duty by not properly disclosing information that they knew or should have known, about the Company's improper business practices to the Trustee. The Trustee is responsible for investing and managing assets of the Plan. However, in doing so, the Trustee shall be subject to the direction and guidance of Wachovia.

107.    Defendants knew or should have known that the fiduciaries they were responsible for monitoring were (a) imprudently allowing the Plan to continue offering Wachovia Stock as an investment alternative for the Plan, and (b) continuing to invest the assets of the Plan in Wachovia Stock when it no longer was prudent to do so. Despite this knowledge, Defendants failed to take action to protect the Plan, and concomitantly the Plan's Participants, from the consequences of these fiduciaries' failures.

108.    Defendants are liable as co-fiduciaries because they knowingly participated in each other's fiduciary breaches as well as those by the appointed Plan fiduciaries, they enabled

the breaches by these Defendants, and they failed to make any effort to remedy these breaches, despite having knowledge of them.

109.    As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan, and indirectly the Plaintiff and the Plan's other Participants and beneficiaries, lost a significant portion of their investments meant to help Participants save for retirement.

110.    Pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a) and ERISA § 409, 29 U.S.C., § 1109(a), Defendants are liable to restore the losses to the Plan caused by their breaches of fiduciary duties alleged in this Count.

## COUNT IV

111.    Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

112.    At all relevant times, as alleged above, all Defendants were fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

113.    ERISA § 404(a)(l)(A), 29 U.S.C. § 1104(a)(l)(A), imposes on a plan fiduciary a duty of loyalty, that is, a duty to discharge his/her duties with respect to a plan solely in the interest of the Participants and beneficiaries and for the exclusive purpose of providing benefits to Participants and beneficiaries.

114.    Given the allegations listed above, Defendants clearly placed the interests of themselves and the Company, as evidenced by the longstanding artificial inflation of Company Stock, before the interests of the Plan and its Participants and beneficiaries. These conflicts of interest put Defendants in the inherently problematic position of having to choose between their own interests as directors, officers, executives (and Wachovia stockholders), and the interests of

the Plan's Participants and beneficiaries, in whose interests Defendants were obligated to loyally serve with an "eye single."

115.    Defendants breached their duty to avoid conflicts of interest and to promptly resolve them by, *inter alia*: failing to engage independent fiduciaries who could make independent judgments concerning the Plan's investment in Wachovia Stock; failing to notify appropriate federal agencies, including the SEC of the facts and transactions which made Wachovia Stock an unsuitable investment for the Plan; failing to take such other steps as were necessary to ensure that Participants' interests were loyally and prudently served; with respect to each of these above failures, doing so in order to prevent drawing attention to the Company's inappropriate practices; and by otherwise placing the interests of the Company and themselves above the interests of the Participants with respect to the Plan's investment in Company Stock.

116.    Pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) and ERISA § 409, 29 U.S.C. § 1109(a), Defendants in this Count are liable to restore the losses to the Plan caused by their breaches of fiduciary duties alleged in this Count.

### COUNT V

117.    Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

118.    ERISA § 405(a), 29 U.S.C. § 1105, imposes liability on a fiduciary, in addition to any liability which he may have under any other provision, for a breach of fiduciary responsibility of another fiduciary with respect to the same plan if (a) he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (b) he fails to comply with § 1104(a)(l) in the administration of his specific responsibilities which give rise to his status as a fiduciary, by enabling such other

fiduciary to commit a breach; or (c) he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

119.    As alleged herein, Wachovia, through its officers and employees, withheld material information from the Plan's Participants and provided misleading disclosures, by the conduct set forth above, and profited from such practices, and, thus, knowledge of such practices is imputed to these Defendants as a matter of law.  In addition, as alleged herein on information and belief, Defendants participated in and/or knew about the Company's misrepresentations regarding the Company's financial condition.  Thus, these defendants as well had knowledge at all relevant times of the factual matters pertaining to the imprudence of Wachovia Stock as an investment for the Participants' retirement assets.

120.    Despite this knowledge, Defendants knowingly participated in their co-fiduciaries' failures to prudently and loyally manage the Plan's investment and holding of Wachovia Stock during the Class Period.  They did so by themselves making imprudent and disloyal decisions respecting the Plan's investment in Wachovia Stock in the manner alleged herein in violation of ERISA § 405(a)(l)(A).  In addition, these same Defendants failed to undertake any effort to remedy their co-fiduciaries' and one-another's failures to prudently and loyally manage the Plan's investment in Wachovia Stock despite knowing such failures were breaches of fiduciary duty under ERISA.  Instead, they allowed the harm to continue and contributed to it throughout the Class Period in violation of ERISA § 405(a)(l)(C).

121.    In further violation of ERISA § 405(a)(l)(C), Defendants also knew that inaccurate and incomplete information had been provided to Participants, yet, they failed to undertake any effort to remedy this breach by ensuring that accurate disclosures were made to Participants and the market as a whole.  Instead, they compounded the problem by downplaying

the significance of Wachovia's problems and further concealing such practices from Participants and the market as a whole.

122.    In addition, Defendants enabled the imprudent asset management decisions of any and all other Defendants -- including any appointed Plan fiduciaries -- who lacked knowledge of the circumstances rendering the stock imprudent, by failing to provide such persons with complete and accurate information regarding the stock, or to the extent all such persons possessed the information, by failing to ensure that they appreciated the true risks to the Plan caused by the Company's improper practices, so that these other Defendants could effectively discharge their obligation to prudently and loyally manage the Plan's investment in Wachovia Stock. In so doing, these Defendants breached ERISA § 405(a)(l)(B).

123.    Further, through their failure to properly and effectively monitor and remove those fiduciaries whose performance was inadequate as alleged above, Defendants enabled these appointed Plan fiduciaries' imprudent management of the Wachovia Stock in the Plan.

124.    As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan, and indirectly Plaintiff and the Plan's other Participants and beneficiaries, lost a significant portion of their retirement investment.

125.    Pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a) and ERISA § 409, 29 U.S.C. § 1109(a), Defendants in this Count are liable to restore the losses to the Plan caused by their breaches of fiduciary duties alleged in this Count.

## COUNT VI

126.    Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

127.    To the extent that Wachovia is found not to have been a fiduciary or to have acted in a fiduciary capacity with respect to the conduct alleged to have violated ERISA, Wachovia knowingly participated in the breaches of those defendants who were fiduciaries and acted in a fiduciary capacity and as such is liable for equitable relief as a result of participating in such breaches.

128.    Wachovia benefited from the breaches by discharging its obligations to make contributions to the Plan in amounts specified by contributing Wachovia Stock to the Plan while the value of the stock was inflated as the result of the breaches of fiduciary duty alleged herein and as a result of Wachovia providing the market with materially misleading statements and omissions.  Accordingly, Wachovia may be required to disgorge this benefit or a constructive trust should be imposed on treasury shares of Wachovia Stock which would have been contributed to the Plan, but for Wachovia's participation in the foregoing breaches of fiduciary duty.

## CAUSATION

129.    The Plan suffered more than one billion dollars in losses in plan benefits because substantial assets of the Plan were imprudently invested or allowed to be invested by Defendants in Wachovia Stock during the Class Period, in breach of Defendants' fiduciary duties.  These losses to the Plan were reflected in the diminished account balances of the Plan's Participants.

130.    Defendants are responsible for losses in Plan benefits caused by the Participants' direction of investment in Wachovia Stock, because Defendants failed to take the necessary and required steps to ensure effective and informed independent participant control over the investment decision-making process, as required by ERISA § 404(c), 29 U.S.C. § 1104(c), and the regulations promulgated thereunder.  Defendants concealed material, non-public facts from

Participants, and provided inaccurate, incomplete and materially misleading information to them regarding the true health and ongoing profitability of the Company, thereby misrepresenting the Company's soundness as an investment vehicle. As a consequence, Participants could not exercise independent control over their investments in Wachovia Stock, and Defendants remain liable under ERISA for losses caused by such investment.

131.   Defendants are also responsible for all losses in Plan benefits caused by the investment of the Plan's Company Contributions in Wachovia Stock during the Class Period, as Defendants controlled the investment, and the investment was imprudent.

132.   Had Defendants properly discharged their fiduciary and/or co-fiduciary duties, including the provision of full and accurate disclosure of material facts concerning investment in Wachovia Stock, eliminating such Company Stock as an investment alternative when it became imprudent, and divesting the Plan from its holdings of Wachovia Stock when maintaining such an investment became imprudent, the Plan would have avoided a substantial portion of the losses that it suffered.

133.   Also, reliance is presumed in an ERISA breach of fiduciary duty case. Nevertheless, to the extent that reliance is an element of the claim, Plaintiff relied to their detriment on the misstatements and omissions that Defendants made to Plan Participants.

### REMEDY FOR BREACHES OF FIDUCIARY DUTY

134.   Defendants breached their fiduciary duties in that they knew or should have known the facts as alleged above, and therefore knew or should have known that the Plan's assets should not have been invested in Wachovia Stock during the Class Period. As a consequence of Defendants' breaches, the Plan suffered significant losses.

135.    ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), authorizes a plan participant to bring a civil action for appropriate relief under ERISA § 409, 29 U.S.C. § 1109. Section 409 requires "any person who is a fiduciary. . . who breaches any of the . . . duties imposed upon fiduciaries . . . to make good to such plan any losses to the plan . . . ." Section 409 also authorizes such other equitable or remedial relief as the court may deem appropriate . . . ."

136.    With respect to calculation of the losses to a plan, breaches of fiduciary duty result in a presumption that, but for the breaches of fiduciary duty, the Participants and beneficiaries in the plan would not have made or maintained their investments in the challenged investment and, where alternative investments were available, that the investments made or maintained in the challenged investment would have instead been made in the most profitable alternative investment available. In this way, the remedy restores the values of the Plan's assets to what they would have been if the Plan had been, properly administered.

137.    Plaintiff and the Class are therefore entitled to relief from Defendants in the form of: (a) a monetary payment to the Plan to make good to the Plan the losses to the Plan resulting from the breaches of fiduciary duties alleged above in an amount to be proven at trial based on the principles described above, as provided by ERISA § 409(a), 29 U.S.C. § 1109(a); (b) injunctive and other appropriate equitable relief to remedy the breaches alleged above, as provided by ERISA §§ 409(a) and 502(a)(2-3), 29 U.S.C. §§ 1109(a) and 1132(a)(2-3); (c) reasonable attorney fees and expenses, as provided by ERISA § 502(g), 29 U.S.C. § 1132(g), the common fund doctrine, and other applicable law; (d) taxable costs; (e) interest on these amounts, as provided by law; and (f) such other legal or equitable relief as may be just and proper.

138.    Under ERISA, each defendant is jointly and severally liable for the losses suffered by the Plan in this case.

## ERISA SECTION 404(c) DEFENSE INAPPLICABLE

139.    ERISA § 404(c), 29 U.S.C. § 1104(c), is an affirmative defense that provides a limited exception to fiduciary liability for losses that result from Participants' exercise of control over investment decisions.    In order for § 404(c) to apply, Participants must in fact exercise "independent control" over investment decisions, and the fiduciaries must otherwise satisfy the procedural and substantive requirements of ERISA § 404(c) and the regulations promulgated thereunder.

140.    Those provisions were not complied with here as, among other reasons, instead of taking the necessary steps to ensure effective participant control by complete and accurate material information disclosure, Defendants did exactly the opposite.    As a consequence, Participants in the Plan did not have informed control over the portion of the Plan's assets that were invested in Wachovia Stock as a result of their investment directions, and Defendants remained entirely responsible for losses that result from such investment.

141.    Because ERISA § 404(c) does not apply here, Defendants' liability to the Plan, the Plaintiff and the Class for relief stemming from Participants' decisions to invest contributions in Wachovia Stock is established upon proof that such investments were or became imprudent and resulted in losses in the value of the assets in the Plan during the Class Period.

142.    Furthermore, under ERISA, fiduciaries -- not Participants -- exercise control over the selection of investment options made available to Participants.    Thus, whether or not Participants are provided with the ability to select among different investment options, and whether or not Participants exercised effective control over their investment decisions (which was not the case here), liability attaches to the fiduciaries if an imprudent investment is selected by the fiduciaries and presented as an option to Participants, and as a result of such action the

Plan suffers a loss. Because this is precisely what occurred in this case, Defendants are liable for the losses incurred by the Plan.

143.    Finally, Defendants remain liable for Plan losses that pertain to Wachovia Stock acquired by the Plan with employer contributions, as Participants did not exercise any control.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for:

A.    a declaration that Defendants, and each of them, have breached their ERISA fiduciary duties to the Participants;

B.    a declaration that Defendants, and each of them, are not entitled to the protection of ERISA § 404(c)(l)(B), 29 U.S.C. § 1104(c)(l)(B);

C.    an order compelling Defendants to make good to the Plan all losses to the Plan resulting from Defendants' breaches of their fiduciary duties, including losses to the Plan resulting from imprudent investment of the Plan's assets, and to restore to the Plan all profits Defendants made through use of the Plan's assets, and to restore to the Plan all profits which the Participants would have made if Defendants had fulfilled their fiduciary obligations;

D.    imposition of a constructive trust on any amounts by which any Defendant was unjustly enriched at the expense of the Plan as the result of breaches of fiduciary duty;

E.    an order enjoining Defendants, and each of them, from any further violations of their ERISA fiduciary obligations;

F.    an order requiring Defendants to appoint one or more independent fiduciaries to participate in the management of the Plan's investment in Wachovia Stock;

G.    actual damages in the amount of any losses the Plan suffered, to be allocated among the Participants' individual accounts as benefits due in proportion to the accounts' diminution in value;

H.    an order awarding costs pursuant to 29 U.S.C. § 1132(g);

I.    an order awarding attorneys' fees pursuant to 29 U.S.C. § 1132(g) and the common fund doctrine; and

J.    an order for equitable restitution and other appropriate equitable monetary relief against Defendants.

Dated:  July 8, 2008

WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP

By:

Mark C. Rifkin
Scott J. Farrell
Matthew M. Guiney
270 Madison Ave.
New York, NY 10016
Tel: (212) 545-4600
Fax:  (212) 545-4653

*Attorneys for Plaintiff*